I respectfully dissent from the majority's disposition of Case No. 01-CA-004.
Appellant, in its first assignment of error in Case No. 01-CA-004, alleges that the trial court erred in denying appellant's Motions for a Directed Verdict and for Judgment Notwithstanding the Verdict. Appellant specifically contends, in part, that appellee's medical expert, Dr. Arndt, failed to state to a reasonable degree of medical certainty that there was a causal connection between the June, 1994, incident and any aggravation of appellee's preexisting degenerative disc disease at L3-L4 and L5-S1. I would concur.
Appellee, in Case No. 01-CA-004, sought workers' compensation benefits for aggravation of his degenerative disc disease at L3-L4 and L5-S1 in connection with a workplace incident that occurred on June 20-21, 1994. Previously, appellee's workers' compensation claim with respect to such incident had been allowed for "sprain/strain lumbrosacral; neuritis lumbrosacral." In Case No. 01-CA-005, appellee also sought recovery of workers' compensation benefits for aggravation of his disc disease in connection with a separate incident that occurred in March of 1998.
Appellee, in support of his contention that the evidence on medical causation was legally sufficient to support a verdict in his favor in Case No. 01-CA-004, relies on the following testimony adduced during direct examination of Dr. Arndt:
 Do you have an opinion as to whether or not the June — I will use that as the 20th date because that's what the bureau shows. Do you have an opinion as to whether or not that June 20th, 1994 claim and injury and whether or not the `98 injury was an aggravation of that previous `94 claim?
A. I believe it was —
MR. PALEUDIS: — Objection.
 THE COURT: The objection is overruled. The answer may stand.
BY MR. TSANGEOS:
Q. I'm sorry. Your answer?
 A. I believe it was an aggravation of the previous existing claim of lumbosacral sprain/strain.
Trial Transcript at 92. Clearly, as evidenced by the above testimony, Dr. Arndt opined at trial that the 1998 incident aggravated appellee's1994 claim — not that the 1994 incident aggravated appellee's preexisting degenerative disc disease. Appellee also points to a letter dated August 14, 1998, to appellee's counsel from Dr. Arndt which states, in pertinent part, as follows:
 Please see enclosed MRI report of lumbar spine on Wayne Hart dated 5/7/98. Please note that there is degenerative disc disease and spinal stenosis at the level of L3-4 and L5-S1. These conditions of degenerative disc disease at L3-4 and L5-S1 as well as spinal stenosis pre-existed the injury of 6/20/94, and it would be my opinion that these conditions were both substantially aggravated by the injury of 6/20/94. Both the x-rays of the lumbar spine dated 6/22/94 and MRI of lumbar spine dated 7/14/94 indicate degenerative disc disease and stenosis at these levels. (Emphasis added.)
Such letter was admitted at trial as appellee's Exhibit 9. When questioned during recross examination about such letter, Dr. Arndt testified as follows:
BY MR. PALEUDIS:
 Q. I want to show you this August 14th of 1998 letter again that you wrote to Mr. McGonelgal?
A. Yes, sir.
 Q. On "the conditions were aggravated," do you see that this is August 14th, 1998 letter?
A. Yes, sir.
 Q. What incident is referred to as being aggravated? Is it the March `98 incident or is it the June 20th, `94 incident?
 A. I refer to it as being substantially aggravated by the 1994 incident is what that says there.
 Q. The degenerative disk [sic] disease of 1994 was aggravated in this letter that's what you were talking about?
A. That's what I said in that letter. That's what it says.
Q. In this letter you were talking about 1994?
A. That's what it says right there, yes.
Trial Transcript at 163-164. Since Dr. Arndt never testifies to areasonable degree of medical certainty or probability that appellee's 1994 incident aggravated his preexisting degenerative disc disease, I would sustain appellant's first assignment of error under Case No. 01-CA-004.
I also would sustain appellant's second assignment of error in Case No. 01-CA-004. Appellant, in such assignment, cites Brody v. Mihm
(1995), 72 Ohio St.3d 81 for the proposition that the trial court erred in allowing appellee to present evidence to the jury as to whether appellee's normal job duties would have aggravated his preexisting degenerative disc disease. The claimant in Brody, a dentist, sought compensation for osteoarthritis of his hip which he claimed was aggravated by the awkward position he had to assume in order to perform his job. The court, in Brody, cited State ex rel. Miller v. Mead Corp. (1979), 58 Ohio St.2d 405, in holding that a claim for "wear-and-tear" aggravation of a nonoccupational disease, that is, an exacerbation of an existing disorder or disease resulting from the ordinary stresses and exertions of the job, is not a compensable injury.
In overruling appellant's second assignment of error in Case No. 01-CA-004, the majority relies, in part, on this Court's opinion in Gomezv. Case Farms of Ohio, Inc. (June 17, 1997), Holmes Case No. 96 CA 562, unreported. However, while in Gomez the claimant's preexisting disease was occupational in nature, in the case sub judice, there is no evidence that appellant's preexisting degenerative disc disease was occupational in nature. For such reason, I would find that, based on the holding inBrody v. Mihm, the trial court erred in allowing appellee to present evidence to the jury as to whether his normal job duties would have aggravated his preexisting degenerative disc disease. However, based upon the above disposition of appellant's first assignment of error in Case No. 01-CA-004, it is not necessary to address whether such error was prejudicial. For the same reason, it is unnecessary to address the argument raised in appellant's third assignment of error in Case No. 01-CA-004.
I concur with the majority's disposition and analysis of appellant Wayne Hart's first and second assignments of error in Case No. 01-CA-005.
I concur with the analysis by the majority of the fourth assignment of error in Case No. 01-CA-004, the third assignment of error in Case No. 01-CA-005 and the first assignment of error in Case No. 01-CA-006. In sum, I agree that Clow Water Systems, not the Bureau of Workers' Compensation, should pay any and all attorney fees of Wayne Hart if Wayne Hart is successful in either of his cases. Therefore, based on my analysis of the assignment of error in 01-CA-004, any attorney fees of Wayne Hart, which are attributable to 99-CI-124 should not be paid by Clow Water Systems. Clow Water Systems should pay attorney fees of Hart only if Hart is successful on remand in Case No. 99-CI-123 and the trial court determines how much of Hart's attorney fees are attributable to 99-CI-123. Other costs of Hart's should be paid from the Workers' Compensation fund, but the only ones chargeable back to Clow would be ones that the trial court finds are attributable as Hart's expenses in 99-CI-123, and only if Hart prevails on remand in 99-CI-123. If Hart is unsuccessful on remand, all of Hart's costs of the litigation in both cases shall be reimbursed to Hart from the "fund", but none would be reimbursed by Clow to the "fund". Therefore, I would vacate the trial court's orders regarding attorney fees and expenses and order the trial court to reconsider the issue of fees and expenses after the conclusion of Case No. 99-CI-123 on remand.